Joseph RICHARDS, Appellant,

v.

AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, Joanie Cummins, Dewey L. Vines, Tina M. Vines, Brenda Vines and Christus Health Southeast Texas d/b/a Christus St. Elizabeth Hospital, Appellees.

No. 09–05–231 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 2, 2006.

Decided May 25, 2006.

Charlton P. Hornsby, Beaumont, for appellant.

Joseph W. Gagnon, Mark R. Ramsey, Ramsey & Murray, P.C., Houston, James R. Old, Jr., Germer Gertz, L.L.P., Beaumont, for appellees.

James R. Old, for Christus Health Southeast Texas.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

DAVID GAULTNEY, Justice.

Appellant Joseph Richards filed a petition for declaratory relief against American National Property and Casualty Company, Joanie Cummins, Dewey L. Vines, Tina M. Vines, Brenda Vines, and Christus Health Southeast Texas a.k.a. Christus St. Elizabeth Hospital. Richards sought the trial court's determination as to whether the defendants violated the terms and conditions of a settlement release agreement by issuing a separate draft payable to plaintiff and St. Elizabeth Hospital. Defendant Christus Health Southeast Texas d/b/a Christus St. Elizabeth

Hospital[1] (St.Elizabeth) filed its answer and a counterclaim for declaratory relief and for collection of reasonable and necessary medical expenses. American National Property and Casualty Company (ANPAC), the individual defendants and St. Elizabeth filed motions for summary judgment under Texas Rules of Civil Procedure 166a(c),(i). The trial court granted the summary judgment motions. Richards filed this appeal. We affirm.

As a result of an automobile accident, Richards incurred medical expenses of $8,152.86 on July 15, 2002, and $121.39 on July 16, 2002, at St. Elizabeth. ANPAC and the individual defendants agreed to settle Richards' personal injuries claim for $20,000. ANPAC sent Richards a release for execution and requested direction as to payment of hospital liens. Richards' attorney returned the executed release with a cover letter stating that no liens were on file at the county clerk's office and that the $20,000 check should be made payable to the attorney and Richards. According to notes of the adjuster handling the claim for ANPAC, she contacted St. Elizabeth Hospital and was informed that it had a lien for Richards in the amount of $8,152.86. Based on that information, she prepared two checks, one payable to Richards and his attorney for $11,847.14 and one payable to Richards and St. Elizabeth in the amount of $8,152.86. St. Elizabeth Hospital filed the lien with the county clerk's office minutes after the two checks were issued.

Richards asserts the trial court erred in granting the motions for summary judgment. He contends St. Elizabeth should not have been a payee on the settlement check because the lien was not filed before payment had issued, and St. Elizabeth is not protected under the Texas Hospital Lien Law under these circumstances. He contends a fact issue exists as to whether ANPAC acted reasonably in issuing payment to Richards and St. Elizabeth Hospital. Richards also argues the trial court erred in denying his motion for continuance, and abused its discretion in denying his motion for new trial.

The Texas Hospital Lien Law is codified in sections 55.001–55.008 of the Texas Property Code. *See* Tex. Prop.Code Ann. §§ 55.001–.008 (Vernon Supp.2005). Hospitals are provided a cause of action under the statute to satisfy their liens, thereby ensuring that accident victims receive prompt treatment, because hospitals may seek reimbursement for their services when the victim is paid money as a result of the accident. *See Baylor Univ. Med. Ctr. v. Travelers Ins. Co.*, 587 S.W.2d 501, 503–04 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.). Richards contends the Texas Hospital Lien Law requires a hospital to file a lien with the county clerk before payment is issued to the injured party in order to be protected under the statute. He further states that if "the lien is filed after payment is issued to the injured person, the lien does not attach to those proceeds."

Texas Property Code section 55.002(a) provides:

A hospital has a lien on a cause of action or claim of an individual who receives hospital services for injuries caused by an accident that is attributed to the negligence of another person. For the lien to attach, the individual must be admitted to a hospital not later than 72 hours after the accident.

1. Richards named the hospital "Christus Health Southeast Texas a.k.a. Christus St. Elizabeth Hospital" in his petition.

TEX. PROP.CODE ANN. § 55.002(a). Section 55.005(a) states, "To secure the lien, a hospital ... must file written notice of the lien with the county clerk of the county in which the services were provided. The notice must be filed before money is paid to an entitled person because of the injury." *Id.* § 55.005(a).

■ The primary objective when construing a statute is to ascertain and give effect to the Legislature's intent. *McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex. 2003). The Supreme Court has explained the Legislature's intent in enacting this statute was "to encourage hospitals to provide immediate care and treatment to persons injured in accidents, and to compensate hospitals for the vast sums of money being lost when treating patients who were unable to pay." *See Members Mut. Ins. Co. v. Hermann Hosp.,* 664 S.W.2d 325, 326 (Tex.1984). We will interpret the statute according to its plain meaning if the statutory language is unambiguous. *Id.* We apply the well-settled construction rules " 'that every word in a statute is presumed to have been used for a purpose' " and " 'that each sentence, clause and word is to be given effect if reasonable and possible.' " *Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.,* 35 S.W.3d 591, 593 (Tex.2000) (quoting *Perkins v. State,* 367 S.W.2d 140, 146 (Tex.1963)).

■ Section 55.005(a) states that securing a lien requires filing the notice "before money is paid to an entitled person because of the injury." TEX. PROP.CODE ANN. § 55.005(a). The filing requirement protects the lienholder when notice is filed, and protects a payor when notice is not. Here, the notice was filed the day the checks were "issued." Richards presented no evidence the checks were delivered, and not simply prepared, before the notice was filed by St. Elizabeth. If the checks were not delivered to Richards before the notice

was filed, money was not "paid" before the filing; "paid" in this context requires at least the delivery of the money to the entitled person. Even if a check payable only to Richards and his attorney had been delivered to Richards, the check could not have been cashed by Richards without paying the lien after the notice was filed, because the lien would have attached to the settlement proceeds. *See* TEX. PROP. CODE ANN. §§ 55.003(a)(3), 55.005(a) (Vernon Supp.2005). Richards owed the money to the hospital. The release agreement itself recognized the possibility of an outstanding hospital bill; the release included an agreement by Richards to "reimburse and indemnify" ANPAC for any amount a hospital may recover from ANPAC as a result of the accident. Richards could not avoid his obligation after the notice was filed, because any attempt by him to release a cause of action to which a hospital lien attached would not be valid without payment of the lien. *See* TEX. PROP.CODE ANN. § 55.007 (Vernon Suppp.2005).

■ The relief Richards requests in issue one is that judgment be "rendered" against ANPAC. Essentially, his position is that the notice was filed too late and should be ignored, and that ANPAC breached their agreement and should be ordered to give him a new check in the amount of $20,000. Whether a breach of contract occurred is a question of law for the court. *Bank One, Tex. N.A. v. Stewart,* 967 S.W.2d 419, 432 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). What Richards called a breach of contract was not a breach at all, but rather was an effort to comply with the statute and obtain a valid release. Under the circumstances, we do not see how inclusion of St. Elizabeth as a payee on the check was a breach of the parties' agreement, or in any event how Richards was harmed.

Richards states a fact issue exists as to whether ANPAC acted unreasonably in making the check payable to Richards and St. Elizabeth Hospital. We disagree. ANPAC had actual notice of the possibility of a lien prior to the filing of the notice and acted to determine the amount owed. Whether or not its actual notice would have exposed it to liability had it failed to pay the hospital is not determinative of the reasonableness of its action.[2] Under the circumstances, ANPAC acted reasonably in investigating the status of the lien and in including St. Elizabeth as a payee on the check.

■ Richards argues the trial court erred in denying his motion for continuance. St. Elizabeth filed its summary judgment motion on the same day it filed its counterclaim and first amended answer, and the summary judgment motion hearing was held twenty-one days later. In Richards' first motion for continuance, he requested additional time to complete discovery by "taking two to three depositions, which include the deposition of [the adjuster], named Defendant." He also based his request on St. Elizabeth's amended answer which included a counterclaim against Richards for breach of contract. He stated he needed additional time to conduct discovery, investigate, and respond as to the breach of contract claim.

■ Whether to allow more time for discovery prior to ruling on a motion for summary judgment is within a trial court's discretion. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex.1996). A reviewing court should not disturb a trial court's denial of a continuance unless the trial court committed a clear abuse of discretion. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex.2002).

An abuse of discretion occurs when the trial court reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.*

Rule 252 of the Texas Rules of Civil Procedure dictates that in moving for a continuance for the first time, a party must state the testimony they are seeking is material, show how it is material, state the party used due diligence in obtaining the testimony, show the due diligence, and state the continuance is not sought for delay but so justice may be done. *See* TEX.R. CIV. P. 252. We disagree with Richards' assertion that the counterclaim and affirmative defenses "changed the nature of the case" and "could not and was not anticipated by [Richards.]" The "new" breach of contract claim and affirmative defenses all directly related to Richards' underlying petition for declaratory relief filed almost two years before the motion for continuance. Richards cannot reasonably claim "surprise" by St. Elizabeth's contract claim when Richards' suit directly attacks St. Elizabeth's attempt to obtain payment for services Richards received from the hospital.

The only person Richards specifically identified to be deposed was the adjuster. She had been a named defendant since his original petition for declaratory relief was filed almost two years before the filing of the motion for continuance. *See generally Martinez v. William C. Flores, M.D., P.A.*, 865 S.W.2d 194, 197 (Tex.App.-Corpus Christi 1993, writ denied); *McAllister v. Samuels*, 857 S.W.2d 768, 773 (Tex.App.-Houston [14th Dist.] 1993, no writ). Richards did not show due diligence in obtaining her testimony. Under the circumstances, the trial court did not abuse its discretion in denying the motion for continuance.

---

**2.** For a discussion of the cause of action, *see generally Baylor Univ. Med. Ctr. v. Borders,*

581 S.W.2d 731, 733 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.).

■ Richards asserts the trial court erred in denying his motion for new trial. He argues the trial court granted summary judgment by default, because Richards did not file a response to St. Elizabeth's motion for summary judgment. In support of this argument he relies on *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124 (1939) and the Fort Worth Court of Appeals' decision in *Cimarron Hydrocarbons Corp. v. Carpenter*, 35 S.W.3d 692 (Tex.App.-Fort Worth 2000), *rev'd*, 98 S.W.3d 682 (Tex.2002). He states that under the Fort Worth Court of Appeals' decision in *Carpenter*, reversed by the Supreme Court, he is entitled to a new trial because, applying *Craddock*, his failure to timely respond to the motion for summary judgment was not intentional or the result of conscious indifference.

Richards filed a response to St. Elizabeth's breach of contract counterclaim seven days before the hearing, requested a continuance, and challenged the affidavits supporting St. Elizabeth's summary judgment motion. Even if we were to accept the argument the pleading was somehow not a response, Richards had notice of the hearing and an opportunity to obtain leave to file a late response. *See Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 684–85 (Tex.2002). Furthermore, the court's denial of his request for continuance does not mean the opportunity to request a proper continuance was not available. *See id.* at 685. The Texas Supreme Court reversed the court of appeals' decision in Carpenter on which Richards relies, and expressly held that "Craddock does not apply to a motion for new trial filed after summary judgment is granted on a motion to which the nonmovant failed to timely respond when the respondent had notice of the hearing and an opportunity to employ the means our civil procedure rules make available to alter the deadlines Rule 166a imposes." *Id.* at 683– 84 (applying instead a "good cause" standard and requiring both a showing the failure was not intentional or the result of conscious indifference and the late response would not result in undue delay or otherwise injure the party seeking summary judgment).

■ Richards argues the court erred in granting summary judgment because he was not afforded a "Monday after the expiration of twenty days" deadline to respond to St. Elizabeth's counterclaim. *See* Tex.R. Civ. P. 99. Texas Rule of Civil Procedure 92 states that "[w]hen a counterclaim or cross-claim is served upon a party who has made an appearance in the action, the party so served, in the absence of a responsive pleading, shall be deemed to have pleaded a general denial of the counterclaim or cross-claim[.]" Tex.R. Civ. P. 92. The trial court did not sign the summary judgment until March 7, 2005, two months after the counterclaim was filed. Plaintiff filed several documents in the interim, including a "response" to the counterclaim. Under these circumstances, Richards has not demonstrated error requiring reversal of the trial court's judgment. *See* Tex.R.App. P. 44.1(a).

Richards' issues are overruled. The trial court's judgment is affirmed.

AFFIRMED.