In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-231 CV


____________________



JOSEPH RICHARDS, Appellant



V.



AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, JOANIE

CUMMINS, DEWEY L. VINES, TINA M. VINES, BRENDA VINES AND
CHRISTUS HEALTH SOUTHEAST TEXAS D/B/A CHRISTUS ST. ELIZABETH HOSPITAL, Appellees






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E-169032






OPINION


 Appellant Joseph Richards filed a petition for declaratory relief against American
National Property and Casualty Company, Joanie Cummins, Dewey L. Vines, Tina M. Vines,
Brenda Vines, and Christus Health Southeast Texas a.k.a. Christus St. Elizabeth Hospital.
Richards sought the trial court's determination as to whether the defendants violated the
terms and conditions of a settlement release agreement by issuing a separate draft payable
to plaintiff and St. Elizabeth Hospital. Defendant Christus Health Southeast Texas d/b/a
Christus St. Elizabeth Hospital (1) (St. Elizabeth) filed its answer and a counterclaim for
declaratory relief and for collection of reasonable and necessary medical expenses. 
American National Property and Casualty Company (ANPAC), the individual defendants and
St. Elizabeth filed motions for summary judgment under Texas Rules of Civil Procedure
166a(c),(i). The trial court granted the summary judgment motions. Richards filed this
appeal. We affirm.

 As a result of an automobile accident, Richards incurred medical expenses of
$8,152.86 on July 15, 2002, and $121.39 on July 16, 2002, at St. Elizabeth. ANPAC and the
individual defendants agreed to settle Richards' personal injuries claim for $20,000. ANPAC
sent Richards a release for execution and requested direction as to payment of hospital liens. 
Richards' attorney returned the executed release with a cover letter stating that no liens were
on file at the county clerk's office and that the $20,000 check should be made payable to the
attorney and Richards. According to notes of the adjuster handling the claim for ANPAC,
she contacted St. Elizabeth Hospital and was informed that it had a lien for Richards in the
amount of $8,152.86. Based on that information, she prepared two checks, one payable to
Richards and his attorney for $11,847.14 and one payable to Richards and St. Elizabeth in
the amount of $8,152.86. St. Elizabeth Hospital filed the lien with the county clerk's office
minutes after the two checks were issued. 

 Richards asserts the trial court erred in granting the motions for summary judgment. 
He contends St. Elizabeth should not have been a payee on the settlement check because the
lien was not filed before payment had issued, and St. Elizabeth is not protected under the
Texas Hospital Lien Law under these circumstances. He contends a fact issue exists as to
whether ANPAC acted reasonably in issuing payment to Richards and St. Elizabeth Hospital. 
Richards also argues the trial court erred in denying his motion for continuance, and abused
its discretion in denying his motion for new trial. 

 The Texas Hospital Lien Law is codified in sections 55.001-55.008 of the Texas
Property Code. See Tex. Prop. Code Ann. §§ 55.001-.008 (Vernon Supp. 2005). Hospitals
are provided a cause of action under the statute to satisfy their liens, thereby ensuring that
accident victims receive prompt treatment, because hospitals may seek reimbursement for
their services when the victim is paid money as a result of the accident. See Baylor Univ.
Med. Ctr. v. Travelers Ins. Co., 587 S.W.2d 501, 503-04 (Tex. Civ. App.--Dallas 1979, writ
ref'd n.r.e.). Richards contends the Texas Hospital Lien Law requires a hospital to file a lien
with the county clerk before payment is issued to the injured party in order to be protected
under the statute. He further states that if "the lien is filed after payment is issued to the
injured person, the lien does not attach to those proceeds." 

 Texas Property Code section 55.002(a) provides:

 A hospital has a lien on a cause of action or claim of an
individual who receives hospital services for injuries caused by
an accident that is attributed to the negligence of another person. 
For the lien to attach, the individual must be admitted to a
hospital not later than 72 hours after the accident.


Tex. Prop. Code Ann. § 55.002(a). Section 55.005(a) states, "To secure the lien, a hospital
. . . must file written notice of the lien with the county clerk of the county in which the
services were provided. The notice must be filed before money is paid to an entitled person
because of the injury." Id. § 55.005(a). 

 The primary objective when construing a statute is to ascertain and give effect to the
Legislature's intent. McIntyre v. Ramirez, 109 S.W.3d 741, 745 (Tex. 2003). The Supreme
Court has explained the Legislature's intent in enacting this statute was "to encourage
hospitals to provide immediate care and treatment to persons injured in accidents, and to
compensate hospitals for the vast sums of money being lost when treating patients who were
unable to pay." See Members Mut. Ins. Co. v. Hermann Hosp., 664 S.W.2d 325, 326 (Tex.
1984). We will interpret the statute according to its plain meaning if the statutory language
is unambiguous. Id. We apply the well-settled construction rules "'that every word in a
statute is presumed to have been used for a purpose'" and "'that each sentence, clause and
word is to be given effect if reasonable and possible.'" Tex. Workers' Comp. Ins. Fund v.
Del Indus., Inc., 35 S.W.3d 591, 593 (Tex. 2000) (quoting Perkins v. State, 367 S.W.2d 140,
146 (Tex. 1963)). 

 Section 55.005(a) states that securing a lien requires filing the notice "before money
is paid to an entitled person because of the injury." Tex. Prop. Code Ann. § 55.005(a). 
The filing requirement protects the lienholder when notice is filed, and protects a payor when
notice is not. Here, the notice was filed the day the checks were "issued." Richards
presented no evidence the checks were delivered, and not simply prepared, before the notice
was filed by St. Elizabeth. If the checks were not delivered to Richards before the notice was
filed, money was not "paid" before the filing; "paid" in this context requires at least the
delivery of the money to the entitled person. Even if a check payable only to Richards and
his attorney had been delivered to Richards, the check could not have been cashed by
Richards without paying the lien after the notice was filed, because the lien would have
attached to the settlement proceeds. See Tex. Prop. Code Ann. §§ 55.003(a)(3), 55.005(a)
(Vernon Supp. 2005). Richards owed the money to the hospital. The release agreement itself
recognized the possibility of an outstanding hospital bill; the release included an agreement
by Richards to "reimburse and indemnify" ANPAC for any amount a hospital may recover
from ANPAC as a result of the accident. Richards could not avoid his obligation after the
notice was filed, because any attempt by him to release a cause of action to which a hospital
lien attached would not be valid without payment of the lien. See Tex. Prop. Code Ann. §
55.007 (Vernon Suppp. 2005). 

 The relief Richards requests in issue one is that judgment be "rendered" against
ANPAC. Essentially, his position is that the notice was filed too late and should be ignored,
and that ANPAC breached their agreement and should be ordered to give him a new check
in the amount of $20,000. Whether a breach of contract occurred is a question of law for the
court. Bank One, Tex. N.A. v. Stewart, 967 S.W.2d 419, 432 (Tex. App.--Houston [14th
Dist.] 1998, pet. denied). What Richards called a breach of contract was not a breach at all,
but rather was an effort to comply with the statute and obtain a valid release. Under the
circumstances, we do not see how inclusion of St. Elizabeth as a payee on the check was a
breach of the parties' agreement, or in any event how Richards was harmed. 

 Richards states a fact issue exists as to whether ANPAC acted unreasonably in making
the check payable to Richards and St. Elizabeth Hospital. We disagree. ANPAC had actual
notice of the possibility of a lien prior to the filing of the notice and acted to determine the
amount owed. Whether or not its actual notice would have exposed it to liability had it failed
to pay the hospital is not determinative of the reasonableness of its action. (2) Under the
circumstances, ANPAC acted reasonably in investigating the status of the lien and in
including St. Elizabeth as a payee on the check.

 Richards argues the trial court erred in denying his motion for continuance. St.
Elizabeth filed its summary judgment motion on the same day it filed its counterclaim and
first amended answer, and the summary judgment motion hearing was held twenty-one days
later. In Richards' first motion for continuance, he requested additional time to complete
discovery by "taking two to three depositions, which include the deposition of [the adjuster],
named Defendant." He also based his request on St. Elizabeth's amended answer which
included a counterclaim against Richards for breach of contract. He stated he needed
additional time to conduct discovery, investigate, and respond as to the breach of contract
claim. 

 Whether to allow more time for discovery prior to ruling on a motion for summary
judgment is within a trial court's discretion. Tenneco Inc. v. Enter. Prods. Co., 925 S.W.2d
640, 647 (Tex. 1996). A reviewing court should not disturb a trial court's denial of a
continuance unless the trial court committed a clear abuse of discretion. See BMC Software
Belg., N.V. v. Marchand, 83 S.W.3d 789, 800 (Tex. 2002). An abuse of discretion occurs
when the trial court reaches a decision so arbitrary and unreasonable as to amount to a clear
and prejudicial error of law. Id. 

 Rule 252 of the Texas Rules of Civil Procedure dictates that in moving for a
continuance for the first time, a party must state the testimony they are seeking is material,
show how it is material, state the party used due diligence in obtaining the testimony, show
the due diligence, and state the continuance is not sought for delay but so justice may be
done. See Tex. R. Civ. P. 252. We disagree with Richards' assertion that the counterclaim
and affirmative defenses "changed the nature of the case" and "could not and was not
anticipated by [Richards.]" The "new" breach of contract claim and affirmative defenses all
directly related to Richards' underlying petition for declaratory relief filed almost two years
before the motion for continuance. Richards cannot reasonably claim "surprise" by St.
Elizabeth's contract claim when Richards' suit directly attacks St. Elizabeth's attempt to
obtain payment for services Richards received from the hospital. 

 The only person Richards specifically identified to be deposed was the adjuster. She
had been a named defendant since his original petition for declaratory relief was filed almost
two years before the filing of the motion for continuance. See generally Martinez v. William
C. Flores, M.D., P.A., 865 S.W.2d 194, 197 (Tex. App.--Corpus Christi 1993, writ denied);
McAllister v. Samuels, 857 S.W.2d 768, 773 (Tex. App.--Houston [14th Dist.] 1993, no writ). 
Richards did not show due diligence in obtaining her testimony. Under the circumstances,
the trial court did not abuse its discretion in denying the motion for continuance.

 Richards asserts the trial court erred in denying his motion for new trial. He argues
the trial court granted summary judgment by default, because Richards did not file a response
to St. Elizabeth's motion for summary judgment. In support of this argument he relies on
Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124 (1939) and the Fort
Worth Court of Appeals' decision in Cimarron Hydrocarbons Corp. v. Carpenter, 35 S.W.3d
692 (Tex. App.--Fort Worth 2000), rev'd, 98 S.W.3d 682 (Tex. 2002). He states that under
the Fort Worth Court of Appeals' decision in Carpenter, reversed by the Supreme Court, he
is entitled to a new trial because, applying Craddock, his failure to timely respond to the
motion for summary judgment was not intentional or the result of conscious indifference. 

 Richards filed a response to St. Elizabeth's breach of contract counterclaim seven days
before the hearing, requested a continuance, and challenged the affidavits supporting St.
Elizabeth's summary judgment motion. Even if we were to accept the argument the pleading
was somehow not a response, Richards had notice of the hearing and an opportunity to obtain
leave to file a late response. See Carpenter v. Cimarron Hydrocarbons Corp., 98 S.W.3d
682, 684-85 (Tex. 2002). Furthermore, the court's denial of his request for continuance does
not mean the opportunity to request a proper continuance was not available. See id. at 685.
The Texas Supreme Court reversed the court of appeals' decision in Carpenter on which
Richards relies, and expressly held that "Craddock does not apply to a motion for new trial
filed after summary judgment is granted on a motion to which the nonmovant failed to timely
respond when the respondent had notice of the hearing and an opportunity to employ the
means our civil procedure rules make available to alter the deadlines Rule 166a imposes." 
Id. at 683-84 (applying instead a "good cause" standard and requiring both a showing the
failure was not intentional or the result of conscious indifference and the late response would
not result in undue delay or otherwise injure the party seeking summary judgment). 

 Richards argues the court erred in granting summary judgment because he was not
afforded a "Monday after the expiration of twenty days" deadline to respond to St.
Elizabeth's counterclaim. See Tex. R. Civ. P. 99. Texas Rule of Civil Procedure 92 states
that "[w]hen a counterclaim or cross-claim is served upon a party who has made an
appearance in the action, the party so served, in the absence of a responsive pleading, shall
be deemed to have pleaded a general denial of the counterclaim or cross-claim[.]" Tex. R.
Civ. P. 92. The trial court did not sign the summary judgment until March 7, 2005, two
months after the counterclaim was filed. Plaintiff filed several documents in the interim,
including a "response" to the counterclaim. Under these circumstances, Richards has not
demonstrated error requiring reversal of the trial court's judgment. See Tex. R. App. P.
44.1(a). 

 Richards' issues are overruled. The trial court's judgment is affirmed.



 AFFIRMED. 

 _________________________________

 DAVID GAULTNEY

 Justice


Submitted on March 2, 2006

Opinion Delivered May 25, 2006


Before McKeithen, C.J., Gaultney and Horton, JJ. 
1. Richards named the hospital "Christus Health Southeast Texas a.k.a. Christus St.
Elizabeth Hospital" in his petition.
2. For a discussion of the cause of action, see generally Baylor Univ. Med. Ctr. v.
Borders, 581 S.W.2d 731, 733 (Tex. Civ. App.--Dallas 1979, writ ref'd n.r.e.).